BRADSHAW v. BRADSHAW.—133 S. W. (2d) 617.

Middle Section.   March 11, 1939.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

E. R. Woolard, of Lebanon, for plaintiff in error Cloyd Bradshaw.

L. P. McFarland, of Lebanon, for defendant in error Frances Hardy Bradshaw.

CROWNOVER, J. This is a contempt proceeding to enforce the payment of alimony.

Cloyd Bradshaw has appealed to this Court from a judgment of the Circuit Court of Wilson County adjudging him in contempt of court and imposing a fine of $25 and committing him to jail for ten days for refusing to pay alimony decreed by the court in granting Frances Hardy Bradshaw a divorce a mensa et thoro.

It appears from the record that Frances Hardy Bradshaw filed a petition in said court, in 1937, seeking divorce from Cloyd Bradshaw and alimony on the grounds of abandonment and failure and refusal to provide for her; that the defendant answered the petition and alleged that he was drunk when they were married and did not know what he was doing, and that he lived with the petitioner

ten days, and then abandoned her; that the case was tried by the judge without a jury and he granted the plaintiff a divorce from bed and board, on September 30, 1937, and directed the defendant to pay $11 a week alimony, beginning on October 9, 1937; and the cause was "retained in the court for further orders, with leave to either party to apply to the court for such modifications of this decree as justice may require"; that the defendant prayed for and was granted an appeal to the Court of Appeals but did not file assignments of errors and brief, and the Court of Appeals affirmed the judgment of the Circuit Court on February 23, 1938.

On March 9, 1938, Frances Hardy Bradshaw filed a petition in the Circuit Court of Wilson County charging that the defendant, Cloyd Bradshaw, had wilfully disobeyed the decree of the court and had failed and refused to pay the alimony ordered by the court, and was thereby guilty of contempt. Petitioner prayed for an attachment for the body of defendant, which was ordered and issued and served.

The defendant filed a sworn answer disavowing any intention to insult the court, and alleging that he was totally unable to pay any part of said alimony.

He filed a petition asking the court to reduce the amount of the weekly payments.

On the hearing the trial judge found that he showed no sufficient cause or excuse for not performing the said decree, or making some effort to perform the same or any part thereof, and he adjudged that said defendant was in contempt of court and ordered that he pay a fine of $25 and be committed to jail for ten days. It was further ordered that he comply with the decree of the court of September 30, 1937, by paying into the hands of the Clerk the sum of $11 per week, as alimony, from and after October 9, 1937.

On motion of the plaintiff to strike the defendant's petition for reduction of the amount of alimony, the court held that the defendant being in contempt could not be heard upon said petition, and the same was stricken.

The defendant filed a motion for a new trial, which was overruled by the court, to which action he excepted, and appealed to this court.

The attorney for the defendant, Cloyd Bradshaw, presented to the trial judge what purported to be a copy of the transcript in the original divorce case, and asked to have the same read in evidence and made a part of the record in this case. The judge refused, as the copy was not properly authenticated, the Clerk having refused to certify the same. The defendant excepted.

The appellant has assigned errors in this court, which are, in substance, as follows:

(1) There is no evidence to support the decree of the court.

(2)   The court erred in sustaining the motion to strike the defendant's petition for reduction of alimony.

(3)   The court erred in refusing to permit the defendant to read in evidence and to file as a part of the transcript what purported to be a copy of the bill of exceptions in the original divorce suit.

1.   The defendant's first assignment of error—that there is no evidence to support the decree of the court—must be overruled.

His whole defense is that he is unable to pay the alimony decreed. But his own evidence shows that he could have paid alimony in some amount during the whole period since the divorce decree.   At the time the court fixed the alimony, in September, 1937, effective October 9, 1937, he was earning $32.80 per week.   His earnings were reduced on November 3rd to $24.40, and on November 10th to $19.52. He was laid off from work in January, 1938, but from that time until the contempt hearing he had collected unemployment insurance in the sum of $15 per week.

He contends that he had to support his two sisters, who are grown and able-bodied, and his father, who is employed, and that he had to keep an automobile in order to ride to his job.

It may be conceded that he was not at all times able to pay the whole of the weekly allowance.   In that case he should have applied to the court for a reduction in the amount.   The order was subject to be modified at any time, and doubtless would have been. Instead of doing so, he absolutely disregarded the order of the court, and made no attempt to pay anything.   He is therefore guilty of contempt.

While it is the general rule that where a man is actually unable to pay the alimony decreed he cannot be held to be guilty of contempt of court (1 R. C. L., 962, sec. 105; 2 Shoulder on Marriage, Divorce, etc., sec. 1845; Going v. Going, 148 Tenn., 522, 554, 256 S. W., 890, 31 A. L. R., 633), and that the court cannot compel a man to work (1 R. C. L., 962, sec. 105; Messervy v. Messervy, 85 S. C., 189, 67 S. E., 130, 30 L. R. A. (N. S.), 1001, 137 Am. St. Rep., 873, 884), yet a man cannot refuse to pay alimony at the time that he is employed and receiving wages, and then when he has spent the money and lost his job plead that he is unable to pay it.   Deen v. Bloomer, 191 Ill., 416, 61 N. E., 131; Clark v. Clark, 152 Tenn., 431, 278 S. W., 65; Brown v. Brown, 156 Tenn., 619, 4 S. W. (2d), 345.

"Where an alleged contemner, however, has voluntarily and contumaciously brought on himself disability to obey an order or decree, he cannot avail himself of a plea of inability to obey as a defense to a charge of contempt."   12 Am. Jur., 439, sec. 73; Clark v. Clark, 152 Tenn., 431, 278 S. W., 65; Brown v. Brown, 156 Tenn., 619, 4 S. W. (2d), 345.

"Where he neglects to apply for a modification of the decree in spite of the fact that sufficient cause exists to warrant an

alteration thereof, the mere existence of such grounds is not available as a defense to proceedings for contempt. . . . Once he has been committed, he can purge himself of the contempt only by showing that he has complied with the decree or has a legal excuse for noncompliance." 1 R. C. L., 961, sec. 104; 17 Am. Jur. 509, sec. 670; Going v. Going, 148 Tenn., 522, 256 S. W., 890, 31 A. L. R., 633.

"In practically all jurisdictions it is held that a husband who is unable to obey a decree for the payment of alimony will not be adjudged in contempt for not obeying such decree unless he has voluntarily created the disability for the purpose of avoiding such payment. Accordingly, to warrant his commitment for contempt it must appear, from evidence introduced upon his examination or from conduct on his part amounting to an admission, that he possessed the means wherewith to comply with the order. It is generally held, however, that the moving papers, upon an application to punish him for contempt, need not allege his ability to pay, owing to the fact that a prima facie case of contempt is established when it is shown that he has not made the payments required by the allowance, inasmuch as the latter is presumed to have been made after due inquiry into his financial condition and to have been fixed at an amount which the court found reasonable and within his ability to pay. The burden of establishing his inability is, therefore, upon the husband. If he can establish that he is actually unable to comply with the decree and that such inability has not been brought about purposely as a result of his own intentional conduct, such facts will constitute a perfect defense to the application to have him punished for contempt. Furthermore, even after commitment he is entitled to be discharged if he can establish bona fide inability to pay. But when his ability to pay may be drawn from the evidence and reasonable deductions therefrom, it is not erroneous to decline to discharge him from confinement. Where it appears that he once possessed the means of complying, but wilfully impoverished himself with the idea of thus defeating the allowance, it is evident that his inability to pay cannot constitute a defense. Similarly, inability to pay by reason of obligations incurred as a result of his remarriage is no defense to contempt proceedings to punish him for failure to pay alimony due to his former wife. Where his inability to pay is bona fide, he cannot be committed for contempt, for a court cannot compel him to learn a trade, acquire a profession, or find employment and thus derive the means wherewith to pay the alimony allotted. It seems to be the general practice, however, not to accept present lack of money as a defense for failure to pay past instalments of alimony if there has been any material income." 17 Am. Jur., 510-511, sec. 671.

The burden of proof was upon him to show that, acting in good faith, and with an honest purpose to comply with the order

of the court, he was unable to do so (Kornik v. Kornik, 3 Tenn. Civ. App., 41, 45); and this, we think, the trial judge was justified in finding he failed to do.

2.  The defendant's second assignment of error is that the trial judge erred in striking his petition for reduction of alimony.

The court, having held that he was in contempt, correctly refused to hear any petition in the principal controversy while he was in contempt.

■ "It is a general rule that a party who is in contempt will not be heard by the court, when he wishes to make a motion or ask a favor. . . . His first duty is to purge his contempt, and the only steps he can take are to apply to the court (1) to set aside the proceedings against him because they are irregular, and (2) to be discharged on the ground that he has purged himself of his contempt, by doing the act for the nonperformance of which the contempt was incurred, and confessing judgment for the costs occasioned by his contumacy.'' Gibson's Suits in Chancery (4 Ed.), sec. 924.

■ ■ If a party file a pleading while in contempt, it will be stricken from the file on motion. 2 Barb Ch. Pr., 281-282; 1 Dan. Ch. Pr., 505-508; Gant v. Gant, 29 Tenn. (10 Humph.), 464, 53 Am. Dec., 736; Rutherford v. Metcalf, 6 Tenn. (5 Hayw.), 58.

In Gant v. Gant, 10 Humph., 464, 53 Am. Dec., 736 (a divorce case), the defendant was attached for contempt. The court held that, being so, his answer could not be received, nor could he be heard to make a motion to dismiss until the contempt was cleared.

The present case is distinguishable from the case of Going v. Going, 148 Tenn., 522, 256 S. W., 890, 31 A. L. R., 633, for the reason that it was shown that Going was not able to comply with the orders of the court at any time, which was a good defense.

3.  The defendant's third assignment complains of the trial judge's refusal to allow him to introduce and treat as read, and to file as a part of the transcript, a copy of the transcript in the original divorce case.

■ This copy was not properly certified, therefore the trial judge correctly excluded it. Tennessee Procedure by Higgins and Crownover, sec. 1331.

■ The defense made to the divorce suit is no defense to the present proceeding. The divorce decree is res adjudicata, therefore it is immaterial that the trial judge refused to allow that record read in evidence or made a part of the bill of exceptions in this case. 17 C. J. S., Contempt, section 122, p. 163, note 97.

■ It results that we hold that the defendant was properly held guilty of contempt, and the action of the court in fining him $25 and sentencing him to ten days in jail and ordering him to pay the costs is affirmed.

The contempt decree does not state that it is within the power of

the defendant to pay the alimony due nor decree that he shall be fined and imprisoned unless he pays the alimony due (Code, sec. 10120). But the punishment of the fine and imprisonment is for the past offense. He could have paid it when he had the money but did not do it, and is in contempt for that reason. Gibson's Suits in Chancery (4 Ed.), sec. 922.

The cause will be remanded to the lower court with direction to proceed with the execution of the judgment of contempt, and for further proceedings.

The costs of the appeal are decreed against Cloyd Bradshaw.

Faw, P. J., and Felts, J., concur.