# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

**February 25, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

JOHN DONALD BALL, JR.       )
       )
    Plaintiff/Respondent/Appellant,    )    Hardin General Sessions No. 3360
       )
v.       )
       )
MISSY LYNN BALL,       )    Appeal No. 02A01-9709-GS-00239
       )
    Defendant/Petitioner/Appellee.    )

APPEAL FROM THE GENERAL SESSIONS COURT
AT SAVANNAH, TENNESSEE

THE HONORABLE MAX SEATON, JUDGE

For the Plaintiff/Respondent/Appellant:    For the Defendant/Petitioner/Appellee:

Daniel L. Smith    Ron E. Harmon
Savannah, Tennessee    Savannah, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a post-divorce action in which the wife sought an order of contempt and judgment for an alimony arrearage. The husband was unemployed, alleged he was unable to pay the arrearage and sought an immediate reduction in alimony. The trial court held the husband in contempt and entered a judgment of $10,000 in favor of the wife. The trial court refused to consider the husband's motion for a reduction in alimony until he purged himself of his contempt by paying the alimony arrearage. Husband appeals. We affirm.

John Donald Ball, Jr. ("Husband") and Missy Lynn Ball ("Wife") were divorced by decree filed October 20, 1995 in the General Sessions Court at Savannah, Tennessee. This decree provided, *inter alia*, that Husband would pay Wife alimony of $750 per month "until [Wife] attains the age of 62, dies, remarries, or lives with a third party as stated in Tennessee Code Annotated Section 36-5-101(a)(3) (Supp. 1994)."

At the time of the original divorce proceedings, Husband worked in the aerospace industry for Lockheed on a government contract and was earning close to $118,000 per year. After the federal government terminated that project, Husband retired from Lockheed and obtained a job with Thiokol that paid $75,000 a year. At the time of the divorce hearing, therefore, Husband was earning $75,000 per year in salary and was receiving $3302 per month in retirement benefits from Lockheed. By October 1995, when the divorce decree was entered, Husband had lost his job with Thiokol and was unemployed. At that point, Husband's only income was his Lockheed retirement benefits.

In the divorce decree, Wife was awarded the net proceeds from the sale of the parties' residence located in Hardin County, Tennessee, one-half of Husband's vested retirement benefits from Lockheed Corporation, a 1993 Cadillac, her doll collection, and various household items as the parties agreed. Husband was awarded real estate located in Camden County, Georgia, one-half of his vested retirement benefits from Lockheed Corporation, $10,000 from the parties' Qualified Deferred Compensation 401k plan in compensation for his interest in the parties' Hardin County, Tennessee residence, a 1992 GMC pickup truck, a boat, and various household items. The balance of the funds from the 401k plan were divided equally between the parties, as were the funds in the parties' income/growth fund, checking, and credit union accounts. The parties' common stock in Parker and Parsley Petroleum Company was also divided equally. The trial court awarded each party one-half of the marital debt.

At the time of the proceedings below, Husband was fifty-eight years old. He had sent over

500 resumes to potential employers throughout the United States and the world, but remained unemployed. Husband had not paid alimony for some time. His only source of income was one-half of the Lockheed retirement benefits, $1594.31 per month.

Wife filed the present petition for contempt for failure to pay alimony on September 27, 1996. Husband responded with an answer and counter-petition for modification or termination of the alimony payments because of his continued unemployment. A hearing was held on Wife's petition for contempt and Husband's counter-petition for a reduction in alimony. At the hearing, Husband explained why he had not earlier sought a reduction in alimony. He testified that at the time of the entry of the divorce decree, he had just recently lost his job and was optimistic that he would quickly find another one. He stated,

> I knew that I would not be able to make the alimony payments and at that time . . . it didn't seem like I had given enough chance to find a job. And so I opted to continue looking for a job rather than come back into court and ask for any relief when I really hadn't given it a chance. Hindsight says I made a mistake there.

After the hearing, the trial court found Husband in contempt and entered a judgment of $10,000 in alimony arrearage in favor of Wife. The trial court found that Husband's income had decreased since the marriage, but found further that Husband's financial condition "was not such as to warrant an immediate reduction in the alimony." The trial court then stated that, "upon [Husband] bringing all past due alimony payments current, he shall be allowed to file a motion to reduce alimony payments and the Court will entertain said motion and reduce his monthly payments to Five Hundred ($500.00) per month." From this order, Husband now appeals.

On appeal, Husband argues that the trial court erred in holding him in contempt for failure to pay alimony because he does not have the current ability to make the payments. He asserts that the trial court should have reduced or terminated the alimony payments in view of the material change in Husband's financial circumstances.

We review the trial court's decision in this case *de novo*, with a presumption of correctness in the court's findings of fact. Tenn. R. App. P. 13(d). The presumption of correctness also attaches to the contempt finding in this case. ***See Johnson v. Johnson***, 499 S.W.2d 268, 271 (Tenn. App. 1973).

Husband argues that the trial court erred in holding him in contempt for failure to pay alimony because, due to his continued unemployment, he does not have the ability to pay the alimony. Wife notes that Husband was unemployed when the original decree was entered, and that he nevertheless entered into the divorce decree without contesting the alimony payments. It is undisputed that Husband was represented by counsel at that time. The trial court found that the contempt allegations were true and that Husband was delinquent in paying his alimony obligation.

We examine first whether the evidence supports the trial court's finding of contempt. A contempt proceeding

> is not a summary proceeding, but merely a supplemental process by which a court endeavors to enforce its judgment . . . . It is a civil, not a criminal, contempt proceeding. It is not even necessary to aver in the petition seeking to enforce the decree by a contempt proceeding that the defendant be able to pay the amount due. Moreover, a failure to comply with such a decree places the defendant prima facie in contempt of court and puts upon him the burden of proving his inability to make the payment as directed. This, because in the original decree the court has necessarily found a present ability to pay.

*Chappell v. Chappell*, 261 S.W.2d 824, 831, 37 Tenn. App. 242 (1952) (citations omitted).

Although a spouse may be held in contempt for failure to pay alimony, he cannot be incarcerated for contempt if he does not have the present ability to pay such alimony. *See Bradshaw v. Bradshaw*, 23 Tenn. App. 359, 133 S.W.2d 617, 619 (1939). It is well settled that "a failure to comply with such a decree places the defendant prima facie in contempt of court and puts upon him the burden of proving his inability to make the payments as directed." *Chappell*, 261 S.W.2d at 831. To avoid being held in contempt, the party claiming an inability to pay alimony must prove that after a good faith effort to pay alimony, he is unable to do so. *See Bradshaw*, 23 Tenn. App. at 363-64, 133 S.W.2d at 620; *Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d 740, 743 (1960).

Husband does not dispute that he is behind in his alimony payments. Wife's contempt petition, therefore, establishes a prima facie case of contempt. We must therefore determine whether Husband met his burden of making a sufficient showing of his inability to pay the alimony obligation of $750 a month. Husband maintains that he has carried his burden. He testified that at the time of the original divorce proceedings, he was working for Lockheed on a government contract and earning a salary of close to $118,000 per year. The federal government terminated that program and Husband retired from his employment with Lockheed. Husband later acquired a position with

Thiokol at the same site, earning $75,000 per year. This job also involved a government contract. The government and Thiokol eliminated this position in June 1995, after the divorce hearing, but before the trial court signed the final decree.

At the hearing of this matter, Husband was unemployed at the age of fifty-eight. In his testimony, he described his efforts at finding employment. After losing his job with Thiokol, Husband took part in an employment assistance program set up by Thiokol and the federal government. Through this program, Husband distributed 500 resumes to potential employers throughout the world, with no success. Husband also maintained contact with local employers, with no success. He left his resume with the Tennessee state employment agency, as well as the Mississippi state employment agency office. Husband expressed his willingness to accept positions with less title and less salary, also with no success. Husband had supplemented his income to some extent with odd jobs and painting work. Clearly Husband had actively sought employment.

Husband also provided an affidavit of assets and expenses. At the time of the proceedings below, his only income was the monthly retirement benefits from Lockheed and odd jobs. Half of the retirement benefits and medical insurance payments are paid directly to Wife from the retirement account, leaving Husband a monthly income of $1,594.31 after payment of the health insurance premiums. This income does not enable Husband to pay a monthly alimony obligation of $750. In the parties' divorce, however, Husband was awarded one-half of the funds from several accounts, including a 401k account, a growth fund account, a checking account, and a credit union account. Husband was also awarded one-half of the parties' stock. These assets were not listed on Husband's affidavit in the proceedings below. The record reflects Husband's receipt of these assets in the divorce decree, and does not indicate that he no longer possesses these funds. As stated above, Husband has the burden of showing his inability to pay the alimony at issue. *See Leonard*, 341 S.W.2d at 743. Husband failed to carry his burden of proof that he was unable to pay the arrearage. Consequently, we affirm the trial court's finding of contempt.

Husband also challenges the trial court's refusal to immediately terminate or significantly reduce alimony. He asserts that the loss of his job and inability to obtain subsequent employment are substantial and material changes of circumstances that justify an immediate decrease in his alimony payments. Husband also argues that Wife no longer has a compelling need for alimony.

4

Wife responds that Husband is not entitled to a reduction in alimony because of the trial court's finding of contempt. She argues that Husband has shown no change of circumstances since the original award, since he was unemployed in October of 1995 when the trial court signed the final decree of divorce.

A trial court may, in its discretion, refuse to consider a request for relief by a party in contempt. "It is a general rule that a party who is in contempt will not be heard by the court, when he wishes to make a motion or ask a favor. . . . His first duty is to purge his contempt. . . ." *Hoyle v. Wilson*, 746 S.W.2d 665, 673 (Tenn. 1988) (quoting *Bradshaw v. Bradshaw*, 23 Tenn. App. 359, 364, 133 S.W.2d 617, 620 (1939) (citation omitted)); *see also Gossett v. Gossett*, 34 Tenn. App. 654, 657-58, 241 S.W.2d 934, 936 (1951). "A court may properly refuse to hear any application of a party who is guilty of willful contempt of court." *Abney v. Abney*, 456 S.W.2d 364, 367 (Tenn. App. 1970). Husband argues that the trial court abused its discretion in denying him relief from his alimony payments. In *Bradshaw v. Bradshaw*, 133 S.W.2d 617, 620 (Tenn. App. 1939), the appellate court affirmed the trial court's refusal to modify alimony after the husband was found to be in contempt. The husband had been ordered to pay $11 per week in alimony. At the time of the decree, he was earning $32.80 per week. This income dwindled to $19.52 per week and eventually he was laid off, leaving him with only $15 per week in unemployment benefits. The court in *Bradshaw* stated,

> It may be conceded that he was not at all times able to pay the whole of the weekly allowance. In that case he should have applied to the court for a reduction in the amount. The order was subject to be modified at any time, and doubtless would have been. Instead of doing so, he absolutely disregarded the order of the court, and made no attempt to pay anything.

*Id.* at 619. In this case, Husband explained that he did not earlier seek a reduction in alimony because he believed he would find work soon and thought he should spend more time searching for employment before asking the court for relief. Under these circumstances, we cannot find that the trial court abused its discretion in requiring Husband to purge his contempt before considering a reduction in alimony.

The decision of the trial court is affirmed.  Costs are assessed against the Appellant, for which execution may issue, if necessary.


                                   _____

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**