# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### ASSIGNED ON BRIEFS AUGUST 31, 2011

## STATE OF TENNESSEE, *ex rel* MARY TUCKER v. RANDY SIMMONS

**Direct Appeal from the Juvenile Court for Lauderdale County**
**No. J5453      Rachel Jackson, Judge**

---

**No. W2011-00556-COA-R3-JV - Filed October 4, 2011**

---

When Father failed to pay child support as ordered, the State filed a petition for contempt against him. The juvenile court found him in civil contempt based upon his willful non-payment. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Dee Shawn Peoples, Memphis, Tennessee, for the appellant, Randy Simmons

Robert E. Cooper, Jr., Attorney General and Reporter, Marcie E. Greene, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee *ex rel*, Mary Tucker

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

On September 15, 2005, the State of Tennessee, *ex rel.* Mary Tucker ("Mother") filed a petition for contempt in the Lauderdale County Juvenile Court alleging that Randy Simmons ("Father") had failed to pay child support as ordered. Following a hearing on February 24, 2011,[1] the trial court entered an order finding Father in civil contempt based upon his "present ability to work and pay the previously ordered child support[,]" and his "willful[] fail[ure] to do so." An arrearage judgment of $9,277.74 was entered against Father, and he was ordered incarcerated until he paid $2,500.00 or until he submitted an employment plan. Father filed his notice of appeal on February 24, 2011, and on March 10, 2011, he made the $2,500.00 payment.

## II. STANDARD OF REVIEW

Civil contempt findings are reviewed under an abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton County Hosp. Authority*, 249 S.W.3d 346, 358 (Tenn. 2008) (citing *Hawk v. Hawk* 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004)). "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Bronson v. Umphries*, 138 S.W.3d 844, 851 (Tenn. Ct. App. 2003) (citing *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). "[W]e will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law[.]" *Id.* However, "we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." *Id.*

A trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d) (2010)**; *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact

---

[1]The case was originally scheduled for hearing on December 2, 2005, and then on July 27, 2006, but the record indicates that Father failed to appear at either setting. It is unclear why the hearing was not re-scheduled until February of 2011; however, at the February 2011 hearing Father stated that he "was incarcerated for a few years."

with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). We accord great deference to a trial court's determinations on matters of witness credibility and will not re-evaluate such determinations absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted).

### III. DISCUSSION

This is a civil contempt matter for failure to pay child support as ordered. On appeal, Father contends that the trial court erred in finding that he had the present ability to pay.[2] For the following reasons, we affirm the decision of the juvenile court.

"'Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights.'" *State v. Smith*, No. E2009-00202-CCA-R3-CD, 2010 WL 5276902, at *2 (Tenn. Crim. App. Dec. 17, 2010) *perm. app. denied* (Tenn. May 27, 2011) (quoting *Black v. Blount* 938 S.W.2d 394, 398 (Tenn. 1996)). "A civil contempt order is 'designed to compel the contemnor to comply with the court's order.'" *Id.* (citing *Black*, 938 S.W.2d at 398); *see also Foster v. Foster* No. M2006–01277-COA-R3-CV, 2007 WL 4530813, at *3 (Tenn. Ct. App. Dec. 20, 2007) ("A court imposes civil contempt against one party for the benefit of the other party litigant."). Thus, a civil contempt order is "'available only when the individual has the ability to comply with the order at the time of the contempt hearing.'" *Id.* (quoting *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000)). Imprisonment may be ordered when civil contempt is found, but "the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern*, 15 S.W.3d at 79 (citing Tenn. Code Ann. § 29-9-104; *Garrett v. Forest Lawn Memorial Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)).

The elements of a civil contempt claim are as follows: "First, the order alleged to have been violated must be 'lawful.' Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have

---

[2]The State phrases the issue more broadly: "Whether the trial court's civil contempt finding is supported by the record."

actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be 'willful.'" ***Konvalinka***, 249 S.W.3d at 354-55 (footnotes omitted). Failure to comply with a child support order establishes a prima facie case of civil contempt against the payor, as "in the original decree the court has necessarily found a present ability to pay." ***Chappell v. Chappell***, 261 S.W.2d 824, 831 (Tenn. Ct. App. 1952) (citing *Clark v. Clark*, 278 S.W. 65 (Tenn. 1925); *Gossett v. Gossett*, 241 S.W.2d 934 (Tenn. Ct. App. 1951)). Once a violation of the support order is shown, the defendant bears the burden of proving his inability to make the payment as directed. ***Id.*** (citations omitted); *see also State ex rel. Moore v. Owens*, No. 89-170-11, 1990 WL 8624, at *3 (Tenn. Ct. App. Feb. 7, 1990). If the defendant establishes his inability to pay, and that such inability is not the result of willful impoverishment, the burden then shifts to the plaintiff to demonstrate the defendant's ability to perform. ***Moore***, 1990 WL 8624, at *3; *see also Bradshaw v. Bradshaw*, 133 S.W.2d 617, 619-20 (Tenn. Ct. App. 1939).

A statement of the evidence from Father's contempt hearing is included in the record before us. Father testified regarding a myriad of accidents which allegedly left him unable to work, and thus, unable to pay child support. We note that his testimony, and the time line of events included therein, is difficult to follow.

At the hearing, Father testified that in 2006, he was "run over by a car" and "broke [his] neck[,]" "cut [his] spinal cord[,]" and "fell over paralyzed[.]" Following this accident, he "shut [his] business down for a couple of weeks and [he] took a vacation[; however . . . a]fter a year or a little bit longer, [he] got tired of watching soap operas and sitting in the house, so [he] got a job [as a corporate manager at Stigler Corporation]." Shortly after beginning his job with Stigler, Father claims that his "tire rod [came] off" while driving a co-worker home, which apparently resulted in an automobile accident. He stated that he "didn't live . . . until . . . they got [him] to Memphis, [and he] came back on the table." He "had a brain hemorrhage," and he currently has "problems sometimes with speech, it just depends on the day . . . Good days . . . bad days."

Father acknowledged that his employment with Stigler began *after* he was "run over by a car" in 2006. However, he claimed that the 2006 accident "was nothing" and that a more-serious accident occurred some time later when he "hit a tree . . . head on in [his] truck." After this accident, he "was out [of work] for about a month. [He] broke everything from [his] waist up, tore [his] rotator cu[ff] on the right side and hadn't been able to fix it[.]" He also allegedly broke his scapula and "messed up" his sternum which caused his "ribs [to grow] back crooked[.]" He "didn't know who [he] was for almost a year." Additionally, Father testified that, at some point, he had a stroke, which is currently causing him to experience a loss of feeling on his left side, and that "the only thing that's holding [his right shoulder] on is tissue, [as] the bone is gone[.]" Mother also took the stand and confirmed

-4-

that Father had "numerous physical injuries" and she stated that she has seen him "[l]aying in the bed suffering or laying in the recliner [sic]." However, Father provided no documentation regarding any of these alleged injuries or his alleged inability to work.

Father, who has a high school diploma, testified that he is not currently working, nor is he seeking employment. Instead, he relies upon his family to support him. He acknowledged that he owes a child support arrearage balance of $9,277.00 and that he has not paid child support since he stopped working. However, Mother testified that "when [she] need[s] something for [her] kids and [she] do[es]n't have it, [she'll] go to [Father]. And if he has it, he will give it to the girls." Similarly, Father, who has nine children, stated, "I've got kids at home. I'm the only one there that takes care of them."

Finally, conflicting evidence regarding disability benefits was presented at the hearing:

| | |
|---|---|
| Judge Jackson: | Mr. Simmons, have you applied for disability? |
| [Father]: | Yes ma'am. |
| Judge Jackson: | What's the verdict? In your disability case? |
| [Father]: | Um, it takes um . . . |
| Judge Jackson: | Did they award you disability or did they not? |
| [Father]: | No, I've . . . (inaudible) . . . been denied, but I haven't been accepted. |
| . . . . | |
| [Father's counsel]: | Your Honor, I can put my client back on the stand. I think what he stated was that they had [not] ruled yet, that it's a pending case. |
| [State's counsel]: | He actually said that he got denied. |
| [Father]: | I never said that I got denied |
| [Mother]: | No what he said was that he didn't get denied, he hadn't got accepted yet. [sic] |
| [Father's counsel]: | He was stating that the matter is still pending with disability. |
| Judge Jackson: | I thought that I had seen somewhere an indication of denial. |
| [Father's counsel]: | There may be an indication, but my client's testimony was that it had not been denied and I don't have any evidence that it was. |
| Judge Jackson: | Continue. Is it pending? |
| [Father's counsel]: | That's what I was told. |
| Judge Jackson: | When was this hearing? |
| [Father]: | I haven't had a hearing. |

. . . .

| | |
|---|---|
| [Father's counsel]: | Your Honor, my understanding is that he hadn't had a hearing. Mr. Simmons had contacted my office to take over the disability case. When we were supposed to meet, he didn't get a chance to get back in touch with me to set up an appointment. So I don't have the documentation. |
| Judge Jackson: | So he hasn't even applied for disability. |
| [State's counsel]: | Your Honor, I'm showing nothing that says he's applied. He hasn't provided us with anything. |
| Judge Jackson: | I have something back in October, this is where I got this from. It says that he's going to reapply for disability which is an indication that he may have already applied once and been denied. |
| [Father's counsel]: | My client informed me that he had filed for disability, and that he didn't have a result. That's the extent of my knowledge. |
| Judge Jackson: | Ok, but has he filed for disability? Because I'm understanding what you're saying now that he's supposed to get in touch with you. |
| [Father's counsel]: | He told me he had filed it and he wanted me to step into it and that he had done it himself. That's my understanding of the circumstances, Your Honor. |
| Judge Jackson: | Does he have proof of filing? |
| [Father's counsel]: | No Your Honor, not with him. |

In its March 2011 order, the trial court made the following relevant findings:

That Respondent is ordered to pay current child support in the amount of $100.00 per month in addition to paying $100.00 per month towards his arrears pursuant to a Default Paternity and Support Order entered with the Lauderdale Juvenile Court on August 15, 2002 . . . .

. . . .

That Respondent has not made a payment through the Central Child Support Receipting Unit since March 2010.

That Respondent gave sworn testimony that despite having a high school

diploma he is not currently looking for employment and has not looked for employment since leaving his last job at Speed Lube in 2008.

That Respondent claims the reason he is not looking for work is that he is disabled, injured, and unable to work.

That although Respondent claims he is disabled, injured, and unable to work, he failed to provide any medical or disability proof substantiating his claim.

That Respondent gave sworn testimony, corroborated by Petitioner's testimony under oath, that he takes care of other children currently in his home and provides monetary support to Petitioner directly when she asks him for support entirely contradicts his claim that he is injured, disabled, and unable to work.

That the Court finds Respondent's sworn testimony regarding his inability to work and lack of present ability to pay court ordered child support not credible.

That the Court finds Respondent is able to work and is voluntarily not seeking employment.

That based on the sworn testimony of the parties and the record as a whole, the Court holds Respondent in Civil Contempt of the Court's order as he has the present ability to work and pay the previously ordered child support amount and he willfully failed to do so.

On appeal, Father apparently concedes that he violated a clear, lawful order of the court. *See Konvalinka*, 249 S.W.3d at 354-55 (footnotes omitted). However, he claims that his violation was not willful because his injuries left him unable to work, and therefore, unable to pay the support ordered. Father relies only upon his and Mother's testimony regarding such alleged limitations, as he has provided no medical or disability documentation to support his claims. The trial court, however, which had the opportunity to observe Father's demeanor and to hear his in-court testimony, specifically discredited Father's testimony regarding his inability to work and to provide support, and Father has presented no clear and convincing evidence to support a re-evaluation of this determination. *See Wells*, S.W.23d at 783 (citations omitted). Furthermore, as the trial court noted, Father's apparent ability to provide monetary support both to Mother and to the children living in his home contradicts his assertion that he is unable to fulfill the support obligation.

In sum, Father has failed to demonstrate his inability to make the child support

payments ordered. Thus, the trial court did not err in determining that he had the present ability to pay, nor did it abuse its discretion in holding him in civil contempt for failing to do so. The judgment of the trial court is affirmed.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the juvenile court. Costs of this appeal are taxed to Appellant, Randy Simmons, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.