IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 8, 2012 Session

IN RE ESTATE OF JAMES EDGAR MILLER

Appeal from the Probate Court for Monroe County
No. 2010117      Hon. J. Reed Dixon, Judge

No. E2012-00648-COA-R3-CV-FILED-JANUARY 22, 2013

Many years prior to the decedent's death, he was ordered to pay child support. Upon his death, the decedent's ex-wife filed a claim against his estate seeking recovery of child support arrearages. The personal representative filed an exception, and the trial court denied the claim. The ex-wife appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J. and D. MICHAEL SWINEY, J., joined.

Matthew C. Haralson, Melanie E. Davis, and Andrew S. Trundle, Maryville, Tennessee, for the appellant, Norma Jean Wallace.

Ashley Harrison Shudan, Loudon, Tennessee, for the appellee, Estate of James Edgar Miller.

**OPINION**

**I. BACKGROUND**

Norma Jean Wallace ("Ex-Wife") and James Edgar Miller ("Decedent") divorced in 1975. As part of the final decree, Ex-Wife was awarded custody of the couple's daughter ("Daughter") (D.O.B. July 1, 1972), and Decedent was ordered to pay $90 per month in child support to Ex-Wife.

Decedent died on or about July 17, 2010. On March 14, 2011, Ex-Wife filed a claim against Decedent's estate ("the Estate") for unpaid child support and interest in the amount

of $68,145.24, along with additional post-judgment interest and a $200 attorney's fee.

Decedent's widow, the personal representative of the Estate ("Personal Representative"), responded with an exception to Ex-Wife's claim, asserting that the child support obligation had been satisfied either in full or in part, the calculated amount due was incorrect, and the claim was barred by the statute of limitations, the doctrine of laches, and principles of equity. Personal Representative later conceded that the claim was not barred by the statute of limitations and dropped the challenge to the calculated amount of the arrearage.

At an initial hearing held on June 1, 2011, Ex-Wife testified that she had never received any child support from Decedent. She acknowledged that she had not attempted to recover the arrearage during Decedent's lifetime. Personal Representative related her belief that Decedent had assisted Daughter financially. She testified that Decedent had provided spending money and helped pay for Daughter's education and other expenses. However, Personal Representative admitted having no knowledge regarding Decedent's child support payments to Ex-Wife or how much child support, if any, had been paid to Ex-Wife. She presented no documentation to evidence satisfaction of the child support obligation.

Daughter testified that Decedent had given her financial assistance over the years, but she admitted having no knowledge regarding any child support payments made by Decedent to Ex-Wife. No further testimony was given at the initial hearing, and the proof was closed by the trial court.

On September 23, 2011, the trial court informed the parties by letter that he had requested and received the original divorce file and would be considering information in the file to decide the instant case. The trial court informed counsel for the parties that he felt driven

> to do what I think both of you all should have done . . . is to actually look at the divorce record and see what was there, and neither of you did. And the absence of that record is what compelled me to look and see what's in that divorce file, because I felt that was a real hole in the proof that I felt shouldn't exist.

At the beginning of a second hearing, held on December 7, 2011, Ex-Wife's counsel made two oral motions: one for recusal and one to keep the divorce file out of the evidence. After a discussion of the trial judge's relationships with Decedent and all parties involved,

the motion to recuse was denied.[1]  Over Ex-Wife's objections, the trial court resolved to consider the divorce file.[2]

The original divorce file contained a petition for attachment in contempt and for a restraining order filed by Ex-Wife against Decedent on June 2, 1978, along with a letter to the county clerk from Decedent's attorney, and Decedent's answer.  In the petition, Ex-Wife stated that Decedent was required to pay her $90 per month in child support and that he "has quit making his child support payments and is more than four (4) months behind."  In the answer, Decedent denied that he willfully refused and neglected to make the payments but admitted he was four months delinquent.  Both the letter from Decedent's attorney and the answer make reference to a check allegedly included with the answer to cover four months of past-due child support.  The record, however, contains no copy of the check, no other evidence that payment was received or processed by the clerk, and no evidence that the money was sent to Ex-Wife.  The file also includes no final resolution of the 1978 matter.

At the second hearing, addressing the 1978 petition's reference that Decedent "has quit making his child support payments and is more than four (4) months behind," Ex-Wife explained the wording was chosen by her attorney over her objections.  She stated, "I didn't agree with it but my lawyer suggested that it be done and me to sign it, to bring it to court."  Ex-Wife reasserted that she had received no child support payments from Decedent.  She observed that the money allegedly sent to the clerk with the answer was not passed along to her.[3]  Ex-Wife testified that she was not informed about the hearing set in response to her petition, and the case was never reset.[4]  She further stated that her contention nothing had been done to collect past-due child support was because no success resulted from the 1978

_____

[1]The trial judge stated: "I have never been to [Decedent]'s house, he's never been to mine, we've never been involved in any kind of social activities together other than attending the same political rallies."

[2]The trial judge responded to the motion as follows:

It concerns me a little that I sought out and discovered this information to the extent that I contacted the [A]OC myself, and, actually the board [of the] judiciary, and asked if I could consider information contained in another file that was not presented in open court but rather was found through my own efforts, and they indicated that yes, I could, and since it was public record, but that I needed to provide you an opportunity to provide additional information, and I am then acting exactly on their instructions to me on how this matter got to this point.

[3]Ex-Wife admitted that Decedent once gave her $20, but the payment was not intending to be child support.

[4]Ex-Wife missed the hearing date and claimed that she never received an order from the trial court.

petition.

On March 6, 2012, the trial court denied Ex-Wife's claim, providing as follows:

[Ex-Wife] is unreliable and is not able to offer competent testimony on whether, when, or how much child support was paid. She has contra[di]cted herself both in court and in her pleadings on those issues.

\* \* \*

Child support was paid by [Decedent] to [Ex-Wife] in some amount.

The court would be required to speculate regarding how much child support was or was not paid.

There is no reliable proof that child support was not paid after 1978.

\* \* \*

(Lettering in original omitted.). Ex-Wife filed a timely appeal from the order denying her claim.

## II. ISSUES

Ex-Wife raises the following issues:

1. Whether the trial court committed reversible error by taking judicial notice of the court file from the original divorce case upon the court's own initiative after the close of evidence.

2. Whether the trial court committed reversible error by taking judicial notice of disputed facts contained in the court file from the original divorce action.

3. Whether the trial court committed reversible error by relying upon inadmissible evidence to determine witness credibility.

4. Whether the trial court applied the incorrect burden in assessing Ex-Wife's claim.

5.  Whether the evidence was sufficient to deny Ex-Wife's claim.


## III.  STANDARD OF REVIEW

To the extent the issues raised in this appeal involve questions of fact, our review of the trial court's judgment is de novo with a presumption of correctness as to the court's factual findings, unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  With regard to the trial court's legal conclusions, our review is de novo with no presumption of correctness.  *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

The credibility of witnesses is peculiarly within the province of the trier of fact. Where the trial court has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, considerable deference must be accorded to the trial court on review.  *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995).

A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence.  *Elliott v. Cobb*, 320 S.W.3d 246, 249-50 (Tenn. 2010).  A trial court also abuses its discretion if it strays beyond the applicable legal standards or when it fails to properly consider the factors that customarily guide a discretionary decision.  *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).


## IV.  DISCUSSION

Tennessee Code Annotated section 34-1-102(b) obligates parents to support a child until the child reaches 18 years of age.  Daughter turned 18 on July 1, 1990.  The fact that a child has reached the age of majority, however, does not relieve a obligor parent from liability for unpaid child support.  *Kuykendall v. Wheeler*, 890 S.W.2d 785, 786 (Tenn. 1994).

Tennessee Code Annotated section 36-5-101(f)(1) states:

Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. . . .  If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears, shall become a judgment for the unpaid amounts, and shall accrue interest from the date of the arrearage . . . .  All interest that accumulates on

arrearages shall be considered child support.

Tenn. Code Ann. § 36-5-101(f)(1) (2012). Section 36-5-101(f)(3) provides that a child support arrearage in existence at the time an order for child support would otherwise terminate continues in effect until the unpaid arrearage and costs are satisfied. A court may enforce such orders for arrearage under its power to punish for contempt. *Id.* Section 36-5-103(g) states: "Judgments for child support payments for each child subject to the order for child support pursuant to this part shall be enforceable without limitation as to time." *See also Lichtenwalter v. Lichtenwalter*, 229 S.W.3d 690, 693 (Tenn. 2007) (noting "portions of Tennessee Code Annotated section 36-5-101(f) support the conclusion that the parent to whom child support is owed is entitled to seek reimbursement for a child support arrearage even if the child has reached majority by the time the suit is filed.").

The party seeking a judgment for delinquent child support has the burden of proving the amount due. *See Pirrie v. Pirrie*, 831 S.W. 2d 296, 298 (Tenn. Ct. App. 1992); *Lowe v. Lowe*, No. 03A01-9607-CV-00233, 1996 WL 671344, at *2 (Tenn. Ct. App. Nov. 21, 1996) (citing *Woodard v. Woodard*, 783 S.W.2d 188, 191 (Tenn. Ct. App. 1989)). "[T]he burden may be met by showing the order to pay and the fact of nonpayment." *Pirrie*, 831 S.W.2d at 298 (citing *Woodard*; *Chappell v. Chappell*, 261 S.W.2d 824 (Tenn. Ct. App. 1952); *Bradshaw v. Bradshaw*, 133 S.W.2d 617 (Tenn. Ct. App. 1939)). Once this burden is met, the burden shifts to the defendant. A petition to recover unpaid child support, "is essentially a proceeding to collect a judgment. In such cases, the plaintiff has the burden of proving the judgment and its validity, but the defendant has the burden of proving affirmative defenses, including payment." *Cagle v. Davis*, 1989 WL 44921, at *5 (Tenn. Ct. App. May 5, 1989) (citing 50 C.J.S. Judgments § 863 at 439).

After the trial court reviewed the original divorce file, the following exchange occurred at the second hearing:

THE COURT: . . . [T]he record clearly shows that child support was paid. Your argument from the beginning has been zero child support was paid. Your client testified under oath that zero child support was paid. The court record demonstrates that simply isn't true. Am I to ignore what is clearly a matter of public record, that child support, in fact, was paid, and it's a matter of record that it was, that there was a proceeding to attempt to collect a small amount of past due child support which is still open and never resolved? Am I to ignore the fact that either your client has an extremely poor memory or that she perjured herself in this court? You know, one of the two.

MR. HARALSON: I would submit the pleading indicates that the decedent

was at least four months behind.  It doesn't say whether that was limited to four months or whether that was two years behind, Your Honor . . . .

* * *

. . . Paragraph 2 of the petition said, "Petitioner further avers the defendant has quit making his child support payments, is more than four months behind."

* * *

. . . I think if there had been findings of fact and an order entered on those pleadings we'd certainly agree [that the trial court could take judicial notice], but I think they were mere allegations made by one side and the other in a disputed, contested divorce.

THE COURT: Well, there's somewhat more than that.  There is a letter from counsel with a check.

MR. HARALSON: Payable to the court.  Your Honor, we contacted the court. We were advised the court didn't keep records back then so we can't prove one way or another what happened to that money.  The clerk's office advised that they can't show and there was no order ordering the clerk of the court to disperse the money back to [Decedent] or to [Ex-Wife].  Again, if it had been findings that can't be reasonably disputed.  If the court had entered an order I think [Personal Representative's counsel] would be spot on, but I think in the event that there are these allegations back and forth, she alleges one thing, that he's more than four month's behind, he denies it, that's the end of it, there is no further action taken, I don't know that that's something that we should be able to consider . . . because it is still reasonably subject to dispute.

Rule 201 of the Tennessee Rules of Evidence provides that a court may take judicial notice of any adjudicative fact "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b).[5]  "This limitation means, 'almost by definition, if a party offers anything other than dilatory or pretextual reasons for opposing the taking of judicial

_____

[5]The court may take judicial notice "whether requested or not" and may do so at any stage of the proceedings.  Tenn. R. Evid. 201(c) & (f).  A party has the right to be heard "as to the propriety of taking judicial notice and the tenor of the matter to be noticed."  Tenn. R. Evid. 201(e).

-7-

notice, the court should view the fact as subject to reasonable dispute and decline to take judicial notice of it.”' *State v. Nunley*, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999) (quoting Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence 44 (3d ed. 1995). In *State v. Lawson*, 291 S.W.3d 864 (Tenn. 2009), our Supreme Court recognized that “the federal courts have approved the taking of judicial notice of filed documents so long as the purpose was 'to establish the fact of such litigation and related filings,' rather than to establish the truth of the matters asserted in the other litigation.” *Lawson,* 291 S.W.3d at 870 (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (emphasis added).

In *Caldwell v. State*, 48 S.W.2d 1087, 1089 (Tenn. 1932), a matter in which the trial court indicated that its ruling was “based both on the record . . . and the private investigation,” the Supreme Court overturned the ruling by the court, noting that, “[t]he trial judge erred in accepting and considering evidence privately acquired by him or evidence beyond the record.” 48 S.W.2d at 1090 (citing 1 Chamberlayne Modern Law on Evidence, 574). The Court reasoned that the result could not be upheld, “because it is impossible to know whether the legal evidence or his private investigation moved him to the conclusion reached.” *Caldwell*, 48 S.W.2d at 1090. A comment to Canon 3 of Supreme Court Rule 10 similarly acknowledges that “[a] judge must not independently investigate facts in a case and must consider only the evidence presented.” Tenn. S. Ct. R. 10.

In this action, it appears that the trial court took judicial notice from the original divorce file the fact that child support payments allegedly had been made, as asserted in the answer and letter to clerk, because there is no other direct evidence in the record demonstrating that child support payments had been made. Taking judicial notice of these disputed allegations from a prior, unresolved proceeding was improper. Ex-Wife offered more than “dilatory or pretextual reasons for opposing the taking of judicial notice.” *Nunley,* 22 S.W.3d at 288. The trial court abused its discretion when it took judicial notice of the disputed facts.

Subsequently, after reviewing the divorce file, the trial court determined that Ex-Wife was not a credible witness. The trial court made these assessments of Ex-Wife's credibility based upon improper judicial notice. This was error.

In this case, the probate court judge, with the best of motives, erroneously took judicial notice of a file in a court other than the one involved in the instant proceeding. Based upon the judicial notice, the trial judge made credibility determinations and decided the claim on its merits. Because he has made these finding and rulings, we believe it would

be appropriate for another judge to hear this matter on remand.  Accordingly, Judge Dixon is directed to take the appropriate steps to have a new judge assigned to hear this matter on remand.

## V.  CONCLUSION

The judgment of the trial court is reversed.  This matter is remanded to another trial court judge for further proceedings consistent with this opinion to determine Ex-Wife's claim against Decedent's Estate.  Costs on appeal are taxed to the appellee, Estate of James Edgar Miller.

_____
JOHN W. McCLARTY, JUDGE