VINCENT J. SCOTT AND MILLICENT J. SCOTT v. F. H. CHAMBERS, CIRCUIT JUDGE.

*Contempt proceedings—Under How. Stat. chap. 256, to enforce a civil remedy—Respondents' solicitor has no authority to make admissions for them—Can only be bound by written admissions, made part of the record, so as to be examinable on appeal—Order for payment of money into court within forty days—Or that respondents stand committed indefinitely—Not authorized by the statute—Assignment for benefit of creditors—Appointment of receiver—Creditors cannot file bill against receiver and assignor and wife—To subject other property to the assignment—Injunction granted in such a case, to prevent the sale of such property, is illegal—And its enforcement will be restrained by mandamus—Cannot issue on showing made on information and belief—In such suit wife stands like any third person—In this State husband and wife not mutually responsible for each other's conduct—If either is chargeable it must be individually—General creditors cannot attack interest of third persons alleged to have been fraudulently obtained—Must first gain standing in court—Such attack as to certain bonds held by assignor's wife—Confined, in this case, to judgment creditors—Assignee or receiver may pursue such frauds directly—Without reference to any other legal proceedings—Such remedy exclusively theirs—Assignment law does not increase the liability of third parties charged with fraud—Or deprive them of right to a full defense—If assignee or receiver refuses to contest claims, under How. Stat. sec. 8746, creditors may apply to chancery court to compel such contest—Receiver cannot be impleaded without leave of the court—Nor can the control of the proceedings be taken from him.*

1. In a proceeding as for contempt to enforce a *civil* remedy under How. Stat. chap. 256, p. 1840, a solicitor has no authority to make admissions for his clients, who can only be bound by *written* admissions, made part of the record, so as to be examinable on appeal.

    So *held*, where a solicitor admitted the truth of the *facts* alleged as the *basis* for *contempt* proceedings, but denied their *legal* sufficiency.

2. In contempt proceedings to enforce a *civil* remedy under How. Stat. chap. 256, p. 1840, the court required the respondents to pay into court a certain sum of money within forty days, or give bonds to produce it, or stand committed *indefinitely*.

    *Held*, that the statute does not permit such a *vague* sentence of imprisonment, and that the same was beyond jurisdiction.

3. A married man made an assignment of his property for the benefit of his creditors, and on the failure of the assignee to qualify a receiver was appointed. Soon after a bill was filed by creditors against the assignor and his wife and the receiver, for the purpose of subjecting to the assignment certain lands and other property, including two United States registered bonds issued to the wife, and an injunction was granted restraining the transfer of the bonds.

The receiver, on filing a petition charging, on *information* and *belief*, that his co-defendants had disposed of the bonds contrary to the injunction, was substituted as complainant, with leave to file a supplemental bill and prosecute the suit, the injunction to continue in full force. The supplemental bill was filed, and a *new* injunction issued, not founded on any allegation in the supplemental bill, and *broader* than *either* bill would warrant.

The receiver afterwards filed a *second* petition, entitled in *his* own suit, charging the assignor and his wife with having disposed of *all* the bonds mentioned in the *original* injunction, and supported it with affidavits; but no *material* fact of *misconduct* on their part was charged on *knowledge*. On *this* petition an order was made requiring the defendants to show cause why they should not be punished for violating the *first* injunction, but containing no direction *when* it should be served, or with what, if any, papers, but a copy of the petition and order was served. A general answer was put in, signed by defendants' solicitor, denying the violation of the injunction, and claiming that no showing had been made against them, and that the injunction was *invalid*.

An order of reference was made to a commissioner, but no proofs were taken, and the order was set aside by the court, and an order made, without any further proof, adjudging the defendants *guilty*, and ordering them to pay into court a certain sum of money, or give bonds to produce it, or stand committed *indefinitely*.

*Held*, that the suit by the creditors was *illegally* commenced, and the injunction should not be enforced, for the reason that complainants had no *right* to sue it out, and because there was no showing made to justify it; and a writ of *mandamus* was granted to vacate the *contempt* order, and restrain all further steps to enforce the *original* injunction.

*Held*, further, that the wife stands in such a suit precisely like any third person; that husband and wife are not, in this State, *mutually* responsible for each other's conduct,—if *either* is chargeable it must be *individually*.

4. It is the *settled* law in this State that creditors cannot attack the interest of *third* parties, alleged to have been obtained by *fraud*, until they have gained a standing in court by *legal* proceedings.

*Held*, further, in a case where certain registered United States bonds, issued to the wife of an assignor for the benefit of his credit-

ors, were sought to be subjected to the assignment, that they could be reached by none but *judgment* creditors, if at all.

*Held*, further, that the assignment law permits the assignee or receiver to pursue such frauds *directly*, and, in case of a *general* assignment, without reference to other *legal* proceedings; but such remedy is given to them *alone*, and the law in no way changes the rights of third persons charged with such fraud so as to *increase* their liability, or deprive them of the right to a *full* defense. [1]

5. Where an *assignee* or *receiver* under a general assignment by a debtor for the benefit of his creditors refuses to contest claims, as provided in How. Stat. § 8746, the creditors may, by summary application, obtain an order from the circuit court in chancery compelling such contest on his part. [1]

6. Where a *receiver* has been appointed under How. Stat. § 8744, on failure of the assignee of an insolvent debtor to execute his trust, or for other reasons therein specified, it is contrary to every principle of law to allow any one else to implead *him* in the same proceeding without the leave of the court, or to take out of *his* hands the control of the proceedings. [1]

Mandamus to vacate an order punishing relators for contempt, and to restrain further steps to enforce an injunction granted against them.

Submitted July 13, 1886.     Granted July 21, 1886.

The facts are stated in the opinion, and summarized in head-note 3.

*John D. Conely*, for relators.

*Fraser, Barbour & Rexford*, for respondent.

CAMPBELL, C. J. On the second day of June, 1886, respondent, purporting to act in a case called a "supplemental suit," in which Andrew McLellan, receiver of Vincent J. Scott, is complainant, and relators and certain others, including Theodore H. Eaton, Theodore H. Eaton, Jr., and Alfred P. Toulmin, were defendants, made an order for the punishment of relators for violating an injunction in another cause, wherein Toulmin and the Eatons were complainants,

---

[1] See *Root v. Potter*, 59 Mich. 499 (head-notes 2, 3); *Wilhelm v. Byles*, 60 Id. 561 (head-note 1); *Angell v. Pickard*, 61 Id. 564 (head-note 8)

which undertook to restrain relators from disposing of certain United States bonds. This order required relators to pay into court $6,100 within 40 days, or give bonds to produce it, or stand committed indefinitely.

When application was made to us for an order to show cause we granted it without prejudice to an appeal. As the action of the court below appears to us a clear excess of jurisdiction, it is a proper case for summary interference by *mandamus* or prohibition, or both.

The proceedings are peculiar from the beginning. In August, 1885, in consequence of the failure of assignees of Vincent J. Scott to qualify, a bill, in accordance with the statute, was filed by Toulmin and the Eatons to put Scott's assignment in the hands of a receiver, and McLellan was appointed receiver. Scott appealed from the appointment, but the appeal was dismissed. Pending this appeal, in October, 1885, the same complainants filed another bill, based on the alleged neglect of the receiver, and making him a party, as well as relators, which assumed to be for the purpose of reaching and bringing under the assignment certain lands and other property, including two United States registered bonds, issued in 1882 and 1885 to Millicent J. Scott, and in the meantime for an injunction to stay their transfer. An injunction was immediately issued and served. This is the injunction in controversy.

This bill, and the affidavits supporting it, contained nothing whatever against the validity of the ownership of the bond of 1882, and was on very vague information and belief as to the bond of 1885. No attempt was made to identify either by registered numbers, and, as it now turns out, there were no such single bonds ever issued at all. The showing was not sufficient for an injunction, had it been otherwise proper.

On January 28, 1886, McLellan, the receiver, filed a petition, setting up that since the filing of the October bill relators had disposed of the bonds contrary to the injunction, and asking leave to be substituted as complainant, and to

enforce the injunction, and for leave to file a supplemental bill, and for a continuance of the old injunction.

This petition was not actually filed until March 9, 1886, when an *ex parte* order was made giving all the relief asked, purporting to be based entirely on the petition, which set forth no material facts on the receiver's knowledge, so far as relators are concerned.

Previous to its filing, and on the sixth of March, 1886, the so-called "supplemental bill" was sworn to, and filed March 9. A new injunction was issued, which does not appear to be founded on any allegation in the bill, inasmuch as it describes five bonds by numbers which neither bill describes, and covers "any other United States bonds which may be in your possession, or under your control, or any of the proceeds of such bonds," which is much broader than either of the bills would warrant.

On March 24, 1886, McLellan filed a brief petition, entitled in his own suit, setting forth his information and belief that relators have disposed of all the bonds mentioned in the original injunction ; basing his belief on an affidavit of one Ketcham, attached. In this affidavit Ketcham, who does not swear to any personal intervention or knowledge beyond a general allegation of familiarity with Scott's business, by conversations and examination of books and letters, undertook to give a history of the original purchase of 1882, which was made in New York by Winslow, Lanier & Co., and which, in November, 1882, stood charged to Mrs. Scott. At that time there is nothing to show any illegality in a gift, if it was a gift, as there is no evidence of insolvency. All beyond this is on information and belief that in July, 1882, Mrs. Scott executed a regularly acknowledged blank assignment, but that Scott received the interest up to July, 1885, when the interest paid by government was forwarded to New York, and credited to exchange account; and, on similar information and belief, he says that Mr. Atkinson sold the bonds about November 3, 1885, to Mr. Elwood, of Detroit, and by reissue they stand in the name of the Wayne County Savings Bank. Mr. Elwood's affidavit is not pro-

duced. The affidavit on information and belief gives a similar account of the other bonds as transferred to other parties in Detroit, whose names are given, but who are not sworn. No material fact of misconduct stands on knowledge.[1]

Upon this showing, the court, in the supplemental suit, on March 24, 1886, made an order requiring relators, on the twenty-ninth of the same month, to show cause why they should not be punished for violating the injunction of October, 1885, in the suit of Toulmin and others. This order contained no direction when it should be served, or with what, if any, papers, but a copy of the petition and order was served. A copy of the supplemental bill was not served until April 8.

On the twelfth of April, 1886, a general answer to the order was filed, signed by Mr. Engle, as relators' solicitor, denying the violation of the injunction, and the disposal of either of the bonds mentioned in the injunction, and claiming that no showing had been made against them,—claiming, also, that the injunction was invalid.

On May 3, 1886, an order of reference was made to a circuit court commissioner, but no proofs were taken. On May 24 a motion was made to set aside this order of reference, and on June 2 this order of reference was set aside, but, by the same order, the court, without further proofs, made the punitory order complained of. In his return the judge says Mr. Engle admitted the truth of the facts alleged, but denied their legal sufficiency.

This was a proceeding as for a contempt to enforce a civil remedy, which seems to have been begun, as it should have been (if valid at all), in accordance with chapter 121 of the Revised Statutes of 1846 (How. Stat. c. 256), but which was finally carried out in disregard of all its restrictions. A solicitor has no authority to make admissions for his clients in such a matter. The defendants could only be bound by written admissions, made part of the record, so as to be examinable on appeal. How far they can be compelled to

---

[1] See *Toledo, etc., Ry. Co. v. D., L. & N. R. R. Co.*, 61 Mich. 9 (head-note 4).

answer we need not consider, as any issue raised must be made out by proof. How. Stat. § 7275. The statement in the return concerning Mr. Engle's admissions cannot be regarded for any purpose.

There is nothing in the statute which would justify such an order as was made in this case in contempt proceedings. Apart from the difficulty of requiring a third party to pay her own money into court before a final adjudication on the merits, the statute does not permit such a vague sentence of imprisonment.

The whole proceeding is beyond the jurisdiction.

This would dispose of the present matter, but it involves some serious questions, which ought not to go without notice.

Mrs. Scott stands in this litigation precisely like any third person. Husband and wife are not, in this State, mutually responsible for each other's conduct. If either is chargeable it must be individually. There is no showing in this case which identifies them both, if it identifies either, with any violation of the injunction, and there is no showing of any joint control of the money ordered to be paid over, and for the non-payment of which they are ordered committed.

But we can find no warrant for the original injunction, and none for connecting it with McLellan's own bill, in which the commitment order was made.

It is the settled law of this State that creditors cannot attack the interest of third parties, alleged to have been obtained by fraud, until they have obtained a standing by legal proceedings ; and, so far as these bonds are concerned, they could only be reached by judgment creditors.[1] The assignment law permits the assignee or receiver to pursue such frauds directly, and, where there is a general assignment, it may be done without reference to other legal proceedings. But the remedy is only given to the assignee or receiver, and the law does not in any way change the rights of third persons so charged so as to increase their liability, or deprive them of their right to a full defense.

---

[1] See *Root v. Potter*, 59 Mich. 498 (head-note 1).

By section 8746 of Howell's Statutes, provision is made whereby, in case of the refusal of an assignee or receiver to contest claims, the creditors may, by summary application,. obtain an order to compel his action in such contest.   If an .assignee does not do his duty otherwise in the first instance,. or in case of fraud, or not qualifying, a bill may be filed for the enforcement of the trust (section 8744), and the court may, if necessary, appoint a receiver.   This was done by the August bill, 1885, and McLellan was appointed receiver.

But when a receiver has been appointed, it is contrary to every principle of law to allow any one else to implead him in the same proceeding without the leave of the court, or to take out of his hands the control of the proceedings.   Toulmin and his associates might have applied to the court to order action by the receiver, but they had no power, on their own motion, to assume to represent the trust, or to prosecute in its behalf on the claim of his neglect, and to make him a. defendant in a proceeding which he, and not they, should have begun.

The suit was illegally commenced, and the injunction should not be enforced, both because complainants had no right to sue it out, and because they made no showing to justify it. As is inevitable in proceedings resting on a wrong basis,. there are other defects ; but we need go no further, as these are vital.

The *mandamus* will issue requiring the order to be vacated,. and that no further steps be taken to enforce the original injunction.

The other Justices concurred.