## LOY v. LOY.—222 S. W. (2d) 873.

Western and Middle Sections Sitting at Knoxville.   March 15, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

Cates, Fowler, Long & Fowler, and W. W. Piper, of Knoxville, for appellants.

Geo. S. Child, of Knoxville, for defendant.

FELTS, J. This was a divorce suit in the Juvenile and Domestic Relations Court of Knox County. The branch of it now before us is an ancillary proceeding by scire facias against the sureties on an appearance bond of defendant to answer for contempt of that court in not paying the sums required by its decree of divorce. The court decreed that the sureties shall pay complainant the amount of the bond.

They appealed from that decree and have assigned a number of errors through which they insist that this bond was taken without authority of law and was a nullity and that even if it was originally valid the court entered certain decrees which had the effect of discharging it. These issues require a statement of the steps in the divorce suit which led to the giving of this bond and those which are relied on as discharging it.

The parties lived in Knox County and the husband was employed at Oak Ridge. She commenced that suit by having him arrested on a writ of ne exeat. He made a ne exeat bond and filed an answer and cross-bill for divorce for cruel and inhuman treatment. Her bill had been upon the same ground and had asked a divorce from bed and board. She now amended so as to seek an absolute divorce and support for herself and their two children.

On December 29, 1945, the court entered a final decree granting her a divorce, ratifying a property settlement between them, giving her custody of the children, and ordering him to pay $25.00 a week for support of the children. This decree continued the ne exeat in force, dismissed a petition she had brought against him for contempt, awarded her a judgment for a pendente lite arrearage of $277.00, and provided, "for the collection of which execution may issue, or citation for contempt may be continued."

Complainant filed another petition for contempt March 7, 1946. It averred that he was in arrears in the sum of $357.00 alimony and $150.00 attorney's fees, or a total of $507.00, and prayed for an attachment for contempt. The judge granted a fiat ordering the clerk to issue an attachment, returnable March 19, 1946, and stating that the sheriff might take an appearance bond in the penalty of $500.00. The sheriff arrested defendant March 21, and took his bond to appear April 30, 1946.

He appeared that day and was tried on the charge of contempt. The court's decree recites that the case was heard upon her petition, his plea of guilty, and the evidence. The court found he was in arrears in the sum of $687.00, adjudged him guilty of contempt, and committed him to jail "until he complies with the orders of the Court, in payment of the alimony and support, or shows a disposition to pay."

On the same day, April 30, 1946, the court entered another decree reciting that I. M. Loy and A. H. Loy, who had signed as sureties on the ne exeat bond, applied to be relieved as such sureties, and that defendant being brought in court and surrendered by said bondsmen, "it is the order of the Court that said bondsmen be relieved of further obligations on said bond." The decree also

stated that "defendant will remain in jail until said arrangement is made for said bond."

It appears that pursuant to the court's decree adjudging defendant guilty of contempt and committing him to jail, he was committed April 30 and remained in jail presumably till May 18, 1946. There was no order or decree of the court releasing him or authorizing the taking of any bond for his release. But the record contains a copy of an appearance bond dated on its back May 18, 1946, which was not filed or approved but which appears to have been found among the papers in the case. It was a printed form filled out as follows:

"The State of Tennessee, Knox County and Hobart Loy and G. E. Loy   We Sheridon O. Loy   Principal

sureties, agree to pay to the State of Tennessee ($500.) Five hundred and no/100.............   Dollars, unless the said   Sherridon O. Loy appear on the   18th   day of   June 194 6,   before Juvenile and Domestic Relations Court for said County, and from day to day thereafter, until discharged by law to answer a criminal prosecution for the offense of contempt of court

and we hereby waive the benefit of all laws exempting property from levy and sale under execution or other process for the collection of debt, by the Constitution and Laws of the State of Tennessee, and we hereby severally certify that we have property over and above all debts and liabilities to the full amount of the above bond.

"Approved this_____ day of 194—

_____ Sheriff

By_____

_____ Deputy Sheriff

(S) Hobart Loy, Fountain City, Rt. #18   L. S.

(S) G. E. Loy   "   L. S.

Principal* (S) S. O. Loy,   "

L. S.
"

It seems that defendant was released from jail on this bond. On June 1, 1946, the court entered an order un-

dertaking to continue the ne exeat in force but at the same time permitting defendant to go to Atlanta, Georgia, to take employment ''to enable him to comply with the orders of this Court.'' This order also referred to the appearance bond and stated that the appearance date was continued and passed until July 1, 1946, at 9:00 A. M. It also stated that it was a consent order, and it was signed by the attorney for complainant and an attorney for defendant and his bondsmen.

There was no order on this appearance date, July 1, 1946, but on August 8 there was an an order stating that by consent of the parties the hearing was passed till September 3, 1946, and that the defendant would remain under his present bond. There appears no other order fixing any appearance date.

On October 5, 1946, defendant filed a petition to reduce the amounts he was required to pay by the former decree of the court. He stated that he was employed by the Suburban Bus Lines, Atlanta, Georgia, earned $26.00 per week, and was unable to pay the $25.00 per week required by that decree. He also asked the court to modify that decree as to his right to see and be with the children.

Complainant moved to dismiss his petition on the ground that he was still in contempt of court and could not be heard. Coupled with this motion, she filed a lengthy answer in which she denied his right to any relief and which need not be detailed.

There was a hearing on November 21, 1946, and the court modified the former decree by reducing the weekly payments to $20.00 per week and by fixing the terms on which defendant might see his children at the home of complainant or at the home of his parents. This decree ordered him to pay $50.00 attorney's fee to com-

plainant's attorney for his services in behalf of the children. It also stated that defendant would "continue under his present appearance bond, or a substitute bond, in the same penalty, for appearance in Court, at the orders of the Court, thereby permitting said defendant to seek employment without the State, as heretofore provided for."

Complainant brought another contempt proceeding April 15, 1947. She filed what was styled a "Motion and Order for Defendant's Appearance and/or Forfeiture of Bond," but it was in fact a petition for a new contempt. That is, a contempt under the second or modified decree of November 21, 1946, fixing defendant's payments at $20.00 per week. It referred to that decree and alleged that defendant had failed to comply with it and was in contempt. It prayed that the court order him to appear for judgment and that the clerk notify him and his sureties that on his failure to appear the bond would be forfeited.

The judge granted a fiat directing the clerk to issue an order for defendant to appear May 1, 1947, and to "notify the sureties on his prosecution bond to have said defendant in court, or suffer forfeiture in the penalty of said bond." A summons was issued and appears to have been served on defendant, commanding him to appear on the "3rd Monday of April next" "to show cause why he is not in contempt of this Court."

On May 6, 1947, an order was entered stating that by consent of the parties the date for defendant to appear was "passed to a date to be fixed by agreement of the parties, or set by the Court, on application therefor." Another order was entered August 21, 1947, stating that defendant's sureties were directed to have him present in court at 9:00 A. M. August 28. On September 2

there was another order stating that the appearance date was set for September 6, 1947.

On December 4, 1947, a final judgment was entered against defendant and the sureties on the appearance bond for $500.00, the amount of the bond. This judgment recited that a forfeiture had been taken and a scire facias had issued, which was not true in point of fact; and it awarded execution. On February 14, 1948, another judgment of forfeiture of the bond was entered, directing the clerk to issue scire facias to the sureties to appear and show cause why the judgment should not be made final. This judgment was entered nunc pro tunc as of September 6, 1947.

The next thing in the record is a capias issued February 18, 1948, commanding the sheriff to arrest defendant instanter on "a charge of the State exhibited against Sheridon O. Loy by Beulah M. Loy for contempt." But there was no return on this capias. Also on February 18 a scire facias issued against defendant and his sureties stating that conditional judgment had been rendered on the appearance bond and directing them to appear March 23, 1948, to show cause why the judgment should not be made final.

The next matter in the record is an order entered February 17, 1948, vacating the final judgment of December 4, 1947, and releasing the execution and the garnishment. This order recited that the forfeiture had been ordered on September 6, 1947, but its entry had been held up by agreement of the sureties and the court in an effort to compromise with complainant; and that the final judgment had been inadvertently entered on the mistaken assumption that the conditional judgment had been entered.

It appears that when the garnishment and the scire facias issued the sureties employed their present counsel and filed their answer to the scire facias February 28, 1948. This answer was quite lengthy. It detailed most of the proceedings above stated and set up a number of defenses. They need not be set forth except to say that they were substantially the same matters which were presented in their motion for a new trial and which are now relied on in this Court.

No question is made as to the power given the Juvenile and Domestic Relations Court by the statute creating it. We assume that in divorce cases it has all the powers which a chancery court has to issue writs of ne exeat and to deal with contemners, and that it is governed by the rules of chancery practice and the statutes in such matters.

■ It is a rule both at common law and in equity that no person shall be twice arrested and held to bail a second time upon the same cause of action. Johnson v. Clendenin, 5 Gill & J., Md., 463, 468-483; McQueen v. Heck, 41 Tenn. 212. A ne exeat bond is in effect a bail. Johnson v. Clendenin, supra; Kirby v. Kirby, 185 Tenn. 408, 206 S. W. (2d) 404-405.

■ So where one has given such a bond, and a decree has been entered against him for the same matter on which the ne exeat issued, and he is taken into custody for contempt in not performing the decree, this fulfills the obligation of the bond and entitles the sureties to a decree cancelling it and discharging them. Johnson v. Clendenin, supra; Debazin v. Debazin, 1 Dickens 95, 21 Eng. Reprint 204; 1 Barbour's Chy. Prac. (1843 Ed.) 654; 2 Daniell's Chy. Plead. & Prac. (6th Am. Ed.) pp. *1713-1714.

■ The power of courts to punish contempts is inherent and essential to the maintenance and execution of judicial authority; and, upon the maxim that equity acts in personam, courts of equity may order one to perform an act within his power to perform, treat his non-performance as a contempt, and imprison him till he does perform. But this power, inherent and vital as it is, is not unlimited; it can be exercised only within the fixed rules of law. Our statutes are declaratory of these rules. Code Sections 10119-10125.

''The general law upon the subject of contempts provides, that where the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it. Code, Section 4108. The resort to this extreme remedy under this section presupposes the exercise of a sound judicial discretion upon the question whether or not the act ordered to be performed is in fact within the party's power of performance. For if it be not, the power of imprisonment under the law does not exist.'' Cash v. Quenichett, 52 Tenn. 737, 741.

■ ■ It is upon this principle that a divorce court may imprison a defendant to compel him to pay alimony or support. That is, his obligation is regarded not merely as a debt but as an act which the court has ordered him to perform. Going v. Going, 148 Tenn. 522, 559-560, 256 S. W. 890, 900, 31 A. L. R. 633, 648. But if such act is not within his power to perform, if he is unable to pay the amounts as decreed, he cannot be held for contempt for failure to pay them. Cash v. Quenichett, supra; Bradshaw v. Bradshaw, 23 Tenn. App. 359, 133 S. W. (2d) 617. A judgment of contempt must contain an affirmative finding of defendant's ability to pay. Crowder

v. Hayse, 9 Tenn. App. 55, 62; Blackwood v. Blackwood,[1] Davidson Law, Opinion of Supreme Court, February 28, 1942, unreported.

None of the decrees in the case before us contains any affirmative finding that defendant was able to pay as ordered. Indeed, some of them show that he was not; that he was permitted to go to Atlanta to find employment "to *enable* him to comply with the orders of this Court." And the decree of November 21, 1946, reduced the amounts of the former decree. That is, it took the place of and superseded the earlier decree which had been the basis of the charge of contempt and the appearance bond to answer that charge.

Also that earlier decree (the one of April 30, 1946) adjudged him guilty of contempt and committed him to jail "until he complies with the orders of the Court, in the payment of the alimony and support, or shows a disposition to pay." Treated as valid it was a final judgment—a conviction upon the charge of contempt. We think this put an end to the charge and exhausted the power of the court over that charge. The court still had power to enforce that judgment—to keep defendant in jail till he performed if he could perform. But after trying him and convicting him on that charge, the court had no power to try him again on the same charge, or to continue that charge indefinitely, or to keep on ordering him to appear again and again to answer that charge.

A decree ordering a defendant to pay periodic instalments of alimony or support is, of course, a continuing thing; but a contempt in refusing to pay such instalments is not a continuing thing. Each refusal is

---

[1] No opinion for publication.

a separate contempt and may be separately dealt with. After a defendant has been arrested, tried, and convicted on one charge of such contempt, he cannot be tried again or held to answer again for that same contempt.

█ Nor can a judgment of contempt or the punishment for contempt be broken up into portions. "If the court undertakes to adjudge a punishment at all, the judgment must be entire and final for the particular contempt." O'Rourke v. Cleveland, 49 N. J. Eq. 577, 580, 25 A. 367, 31 Am. St. Rep. 719. To the same effect: In re Brown, 4 Colo. 438; In re Moore, 93 Cal. App. 488, 269 P. 664; Scott v. Chambers, 62 Mich. 532; 29 N. W. 94; Posvar v. McPherson, 36 Wyo. 159, 253 P. 667; Gaschk v. Kohler, 70 N. D. 358, 294 N. W. 441; cf: Skirven v. Skirven, 154 Md. 267, 140 A. 205, 56 A. L. R. 697.

The case last cited is not to the contrary. There, there was no attempt to try defendant again or hold him to answer a second time for the same contempt. He had been committed for ten days for refusing to pay pendente lite alimony. Several months later, while persisting in his refusal, he moved to require complainant to take her proof. The trial court entered an order overruling his motion on the ground that he was still in contempt and not entitled to be heard. He appealed from this order. The appellate court, while expressing approval of the order, refused to affirm it but dismissed the appeal because the order was not final or appealable. Nor is our conclusion opposed by any of the other cases cited in the Annotation to that case, see 56 A. L. R. 700-702.

The general rule is that a person arrested upon an attachment to answer for a contempt is entitled to bail or to give a bond for his appearance (Code Section

10123); and it seems to be a practice to extend this rule to attachments for contempt in not paying alimony or support. But we do not understand that there is any authority for such a practice. The chancery rule is that an attachment for non-performance of a decree, unlike other attachments for contempt, is not a bailable process; and the person attached for non-performance must be committed to or detained in prison. 2 Daniell's Chy. Plead. & Prac., p. *1047; Gibson's Suits in Chancery (4th Ed.), Section 921. The matter is now controlled by statute, Code Section 10591, which is as follows: ''In attachments for the nonperformance of decrees no bail is to be taken, but the party shall be committed to jail, there to remain until he performs the decree.''

But, as we have seen, the court did not undertake to make any order authorizing the taking of this appearance bond. Nor was the bond approved by any officer or filed by the clerk. It was merely found among the papers in the case and put into the bill of exceptions as an exhibit to the testimony of the deputy clerk. In these circumstances we think there was no authority of law for the taking of this bond and it was therefore a nullity.

It is generally held that a bond taken without authority of law is void and does not bind the principal or the sureties. State v. Horn, 19 Tenn. 473; State v. McCoy, 60 Tenn. 111; Brasfield v. Milan, 127 Tenn. 561, 155 S. W. 926, 44 L. R. A., N. S., 1150; New Amsterdam Cas. Co. v. Western Cas. & Surety Co.,[1] Knox Equity, Opinions of Supreme Court by DeHaven, Judge, filed November 25, 1939 and December 2, 1940, unreported; also see numerous cases collected in the Annotation, 34 A L. R. 612.

Our conclusion that this bond was a nullity renders it unnecessary to discuss the other questions raised by appellants. The decree of the Juvenile and Domestic Relations Court is reversed and the proceedings by scire facias dismissed. The costs of the cause are adjudged against complainant.

Anderson, P. J., and Hickerson and Swepston, JJ., concur.